**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BELL SPORTS, LLC, | Civil Action No.: |
| Plaintiff, |  |
|  | **DEMAND FOR JURY TRIAL** |
| v. |  |
| SMITH SPORT OPTICS, INC., |  |
| Defendant. |  |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Bell Sports, LLC ("Bell Sports" or "Plaintiff"), for its complaint for patent infringement against Defendant Smith Sport Optics, Inc. ("Smith" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for infringement of United States Patent No. 10,219,577 ("the '577 Patent") and of United States Patent No. 11,589,631 ("the '631 Patent") arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*

**THE PARTIES**

2.     Plaintiff Bell Sports is a California limited liability company that has a principal place of business at 16752 Armstrong Ave, Irvine, California, 92606. Plaintiff recently converted to Bell Sports, LLC from Bell Sports, Inc., a California corporation, pursuant to the California Revised Uniform Limited Liability Company Act.

3.     Upon information and belief, Defendant Smith is a Delaware corporation with its corporate headquarters at 220 SE Martin Luther King Jr. Blvd., Portland, Oregon 97214.

## JURISDICTION AND VENUE

4.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, and, more particularly, 35 U.S.C. §§ 271 and 281.

5.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Defendant because, as a Delaware corporation, Smith is subject to general personal jurisdiction in Delaware.

7.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1400(b) because Defendant is incorporated in Delaware, has committed acts of infringement in this Judicial District, and because Delaware is a convenient forum for resolution of the parties' disputes set forth herein.

## BACKGROUND

8.     Bell Sports has decades of experience designing and manufacturing unique and innovative, high-quality bicycle and motorcycle helmets. Bell Sports invests heavily in research and development to improve its helmets and the features thereof.

9.     One of the issues with conventional helmet systems is that they can be difficult for a wearer to adjust to obtain a secure fit. For example, conventional helmet systems often feature numerous straps that a user is required to adjust to obtain a secure fit, which can lead to user-error, frustration, inefficiency, time delays, and other problems. These issues are compounded when the wearer is a child.

10.     One of Bell Sport's innovative helmet features is the "True Fit" fit system. Research and development on True Fit began at least as early as 2004. It was released in 2009 and quickly garnered acclaim from safety groups and industry observers as an important development in helmet safety, including because it enabled a secure fit with a minimum of time and expertise. True Fit is

used and/or has been used in over 80 models of Bell helmets, including the Adrenaline, Racer, and Aero models. Tens of millions of helmets that include True Fit have been sold throughout the world.

11.     To protect its innovations, Bell Sports sought and obtained patent protection for its innovative helmet features. Bell Sports is the owner by assignment of U.S. Patent No. 10,219,577 entitled "Integrated fit and retention system." The United States Patent and Trademark Office lawfully and duly issued the '577 Patent on March 5, 2019 and the '577 Patent is valid and enforceable. A true and correct copy of the '577 Patent is attached hereto as Exhibit A.

12.     Bell Sports previously asserted the '577 Patent in *Bell Sports, Inc. v. Nutcase, Inc.*, 2:20-CV 20-8082-GW-MAA (C.D. Cal), which Bell Sports initiated on September 3, 2020.  The parties reached a settlement agreement and the Court dismissed the case on January 7, 2021.

13.     Another of Bell Sport's innovative helmet features is the "No Missed Races Bumper" (NMR$^{TM}$), which consists of two bumpers on either side of the helmet that can compress under load but bounce back to the original form, reducing the likelihood of injury that otherwise could be caused by the lower helmet edge contacting the rider's collarbone.  Bell Sports launched its NMR$^{TM}$ Bumpers—recognized as an important development in helmet safety—in or about April 2021 as a feature in Bell Sports' Moto-10 Helmet.

14.     Bell Sports is also the owner by assignment of U.S. Patent No. 11,589,631 entitled "Helmet with integrated shoulder pad." The United States Patent and Trademark Office lawfully and duly issued the '631 Patent on February 28, 2023, and the '631 Patent is valid and enforceable. A true and correct copy of the '631 Patent is attached hereto as Exhibit B.

15.     Defendant Smith is a direct competitor of Bell Sports that also sells bicycle helmets and snow helmets for snowboarding and skiing. Many of Smith's helmets contain Smith's "self-

adjusting Lifestyle Fit System," including, but not limited to, Smith's Maze Bike helmet, Scout Snow helmet, Scout Jr. Snow helmet, Scout Round Contour Fit helmet, Maze Snow helmet, Allure Snow helmet, Holt Snow helmet, Method Round Contour Fit helmet, and Method Mips® Round Contour Fit ("Lifestyle Fit System Helmets"). Images of the various Lifestyle Fit System Helmets are depicted below:

| Maze Bike helmet |
| --- |
|  |

**Maze Snow helmet**

 

**Allure Snow helmet**

 

**Holt Snow helmet**

 

**Scout Snow helmet**

 

**Scout Jr. Snow helmet**



**Scout Round Contour Fit**



**Method Round Contour Fit helmet**



**Method Mips® Round Contour Fit**



16.    In a letter dated June 30, 2023, Bell Sports notified Defendant Smith that its helmets containing its Lifestyle Fit System practice the inventions disclosed and claimed in the '577 Patent. Despite being notified of its infringement, Smith refused, in subsequent correspondence, to cease its infringement and continues to offer for sale and sell its Lifestyle Fit System helmets. Defendant

Smith also failed to modify the design of its Lifestyle Fit System helmets into a non-infringing alternative.

17.     Smith also offers for sale a bike helmet sold under the name "Hardline" ("Hardline Bike Helmet"). The Hardline Bike Helmet incorporates what Smith refers to as "a Smith-designed collarbone impact protection zone," which purportedly is designed "to help mitigate the risk of helmet-to-collarbone contact in a crash. Images of the Hardline Bike Helmet are depicted below:

**Hardline Bike Helmet**



18.     On March 1, 2024, Smith filed at the USPTO Patent Application No. 18/593,821, which published on December 26, 2024, as Pub. No. 2024/0423312 Al (the "'312 Publication"). The '312 Publication describes various helmet impact structures to avoid injuries to a rider's collarbone, including (paragraph 19) the impact structures of "conventional helmets" with interior liners that "extend downward from the helmet interior and into or adjacent to a recess." On

information and belief, paragraph 19 of the '312 Publication refers to Bell Sports' Moto-10 Helmet

(released as early as April 2021), which embodies the claims of Bell's '631 Patent.

19.     On information and belief, and due to the parties' prior correspondence concerning

Bell's '577 Patent and the parties' status as competitors, Smith has been aware of Bell's helmet

patent portfolio, including the '631 Patent, since no later than mid-2023.

20.     The '631 Patent Number and Bell Sports' Moto-10 Helmet was added to Bell

Sports' patent marking website[1] on July 4, 2025.

21.     In a letter dated August 13, 2025, Bell Sports notified Defendant Smith that its

Hardline Bike Helmet containing its "collarbone impact protection zone" practices the inventions

disclosed and claimed in the '631 Patent.  Despite Bell Sports' request that Smith contact Bell

Sports to discuss whether Smith prefers to take a license or cease selling the Hardline Bike Helmet

product, Smith had not responded to Bell Sports' letter as of the filing date of this complaint.

## FIRST CAUSE OF ACTION

### Infringement of U.S. Patent No. 10,219,577

22.     Bell Sports realleges and incorporates by reference the foregoing allegations set

forth above.

23.     Defendant Smith's products containing its Lifestyle Fit System, including at least,

upon information and belief, each of its Lifestyle Fit System Helmets infringe at least claims 1, 4,

7, 18, 19, and 20 of the '577 Patent under at least 35 U.S.C. § 271(a) and (b).

24.     Upon information and belief, Defendant Smith has directly infringed one or more

claims of the '577 Patent through manufacture, use, sale, offer for sale, and/or importation into the

United States of its Lifestyle Fit System Helmets.

---

[1] *See* https://www.revelyst.com/patents.html.

25.    For example, the Maze Bike helmet includes each of the limitations of claims 1, 4, 7, 18, 19, and 20 of the '577 Patent. A claim chart showing how the Maze Bike helmet containing Smith's Lifestyle Fit System meets each element of these claims is attached as Exhibit C.  The other Lifestyle Fit System Helmets infringe in the same manner.

26.    Each of Smith's Lifestyle Fit System Helmets includes a helmet body comprising an interior, an exterior opposite the interior, and a rear of the helmet body.

27.    Each of Smith's Lifestyle Fit System Helmets includes a first front hanger and a second front hanger coupled to the helmet body through an interior surface of the helmet body.

28.    Each of Smith's Lifestyle Fit System Helmets includes at least one rear hanger coupled to the helmet body through the interior surface of the helmet body.

29.    Each of Smith's Lifestyle Fit System Helmets includes a second end of the first strap coupled to the at least one rear hanger proximate a rear of the helmet body and a second end of the second strap coupled to the at least one rear hanger proximate the rear of the helmet body.

30.    Each of the first and second straps of Smith's Lifestyle Fit System Helmets forms a shaped loop below respective first and second sides of the helmet body.

31.    Each of Smith's Lifestyle Fit System Helmets includes an elastic fit strap coupled between the first strap and the second strap below a lower edge of the helmet body proximate the rear of the helmet body such that the elastic fit strap sits below an occipital lobe of a wearer of the helmet when the helmet is worn by the wearer. The first and second straps are formed of a material more rigid than the elastic fit strap.

32.    Each of Smith's Lifestyle Fit System Helmets includes a chin strap coupled to at least the first strap.

33.     Defendant Smith has been on notice of the '577 Patent and of its infringing behavior since at least as early Smith's receipt of Bell Sports' June 30, 2023 letter.

34.     Upon information and belief, Defendant Smith has indirectly infringed the '577 Patent, actively inducing others, including its retailers and customers, to infringe the '577 Patent by marketing and selling its Lifestyle Fit System helmets, knowing and intending that such promotion would induce others to use, sell, and/or offer for sale its Lifestyle Fit System helmets, which embody one or more of the inventions claimed in the '577 Patent.

35.     Accordingly, Defendant Smith has infringed, infringes, and continues to infringe at least claims 1, 4, 7, and 18, 19, and 20 of the '577 Patent under at least 35 U.S.C. § 271(a) and (b).

36.     By directly and indirectly infringing, Defendant Smith has injured Bell Sports and is liable for monetary damages, interest, and costs pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for Smith's infringement, including without limitation, any profits lost by Bell Sports as a result.

37.     Upon information and belief, having known about the '577 Patent and its infringement thereof since at least June 30, 2023, Defendant Smith continued its infringement of the '577 Patent and released the Method Round Contour Fit helmet containing its Lifestyle Fit System, and such infringement is ongoing. Smith's behavior indicates that its infringement is malicious, deliberate, consciously wrongful, and/or done in bad faith.

38.     Defendant Smith is, therefore, also liable for willful infringement. Bell Sports seeks enhanced damages under 35 U.S.C. § 284 of three times the amount found adequate to compensate Bell for Smith's infringement.

39.     Further, this is an exceptional case under 35 U.S.C. § 285 for which Bell Sports also seeks to recover and is entitled to recover its attorneys' fees incurred in connection with prosecuting this claim.

## SECOND CAUSE OF ACTION

## Infringement of U.S. Patent No. 11,589,631

40.     Bell Sports realleges and incorporates by reference the foregoing allegations set forth above.

41.     Defendant Smith's products containing its "Smith-designed collarbone impact protection zone," including at least, upon information and belief, its Hardline Bike Helmets infringe at least claims 1, 2, 5, 7, 8, 9, 11, and 13 of the '631 Patent under at least 35 U.S.C. § 271(a) and (b).

42.     Upon information and belief, Defendant Smith has directly infringed one or more claims of the '631 Patent through manufacture, use, sale, offer for sale, and/or importation into the United States of its Hardline Bike Helmet.

43.     A claim chart showing how the Hardline Bike Helmet containing Smith's "collarbone impact protection zone" meets each element of these claims is attached as Exhibit D.

44.     Smith's Hardline Bike Helmet includes an outer shell, which includes an outer shell lower edge, wherein a portion of the outer shell lower edge of each of a respective left side and a right side of the helmet indents upward to form at least one shoulder pad recess on the respective left and right sides of the helmet body.

45.     Smith's Hardline Bike Helmet includes an energy management liner, a majority of which is disposed inside the outer shell.

46.     The outer shell and the energy management liner inside the outer shell of the Hardline Bike Helmet define a first width.

47.     The energy management liner of the Hardline Bike Helmet includes two shoulder pad assemblies. Each shoulder pad assembly is partially disposed inside the outer shell, with a portion not disposed inside the outer shell including a shoulder pad extending outward and downward into the shoulder pad recess on the respective left side or right side of the helmet.

48.     The shoulder pad of the Hardline Bike Helmet extends across a portion of the width of the outer shell lower edge, wherein the shoulder pad has a second width substantially the same as the first width.

49.     Based on Smith's representations about its Hardline Bike Helmet[2], the shoulder pad of the Hardline Helmet is configured to alleviate the impact of the helmet to a wearer's shoulder.

50.     The shoulder pad assembly of the Hardline Bike Helmet includes a chinbar portion extending into a chinbar of the helmet body.

51.     The energy management liner of the Hardline Bike Helmet includes expanded polypropylene (EPP).

52.     The shoulder pad of the Hardline Bike Helmet includes a length in a range of 2 to 7 inches and a height in a range of 0.2 to 2 inches.  The shoulder pad measures about 4 to 5 inches in length and about 0.5 inches in height.

53.     On information and belief, Defendant Smith has known of the '631 Patent since mid-2023 and has been on notice of the '631 Patent and of its infringing behavior since at least as early as August 13, 2025.

---

[2] *See* https://www.smithoptics.com/en_US/p/helmet/hardline-composite-downhill-helmet-mtb-helmet/HARDLINE-COMPOSITE-HELMET.html?dwvar_HARDLINE-COMPOSITE-HELMET_color=matteChalk

54.     Upon information and belief, Defendant Smith has indirectly infringed the '631 Patent and actively induced others, including its retailers and customers, to infringe the '631 Patent by marketing and selling its Hardline Bike Helmet, knowing and intending that such promotion would induce others to use, sell, and/or offer for sale its Hardline Bike Helmet, which embody one or more of the inventions claimed in the '631 Patent.

55.     Accordingly, Defendant Smith has infringed, infringes, and continues to infringe at least claims 1, 2, 5, 7, 8, 9, 11, and 13 of the '631 Patent under at least 35 U.S.C. § 271(a) and (b).

56.     By directly and indirectly infringing, Defendant Smith has injured Bell Sports and is liable for monetary damages, interest, and costs pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for Smith's infringement, including without limitation, any profits lost by Bell Sports as a result.

57.     Upon information and belief, having known about the '631 Patent and its infringement thereof since mid-2023, Defendant Smith began its infringement of the '631 Patent importing into and selling in the United States Smith's Hardline Bike Helmet, and such infringement is ongoing. Smith's behavior indicates that its infringement is malicious, deliberate, consciously wrongful, and/or done in bad faith.

58.     Defendant Smith is, therefore, also liable for willful infringement. Bell Sports seeks enhanced damages under 35 U.S.C. § 284 of three times the amount found adequate to compensate Bell for Smith's infringement.

59.     Further, this is an exceptional case under 35 U.S.C. § 285 for which Bell Sports also seeks to recover and is entitled to recover its attorneys' fees incurred in connection with prosecuting this claim.

60.     Unless restrained by the Court, Defendant Smith's actions will cause ongoing harm to Bell Sports for which it has no adequate remedy at law and for which it seeks injunctive relief under 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Bell Sports respectfully requests that judgment be entered in its favor and against Defendant Smith as follows:

a.     Pursuant to 35 U.S.C. § 271, a judgment that Defendant Smith has infringed the '577 Patent and '631 Patent through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

b.     Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant Smith from infringing the '631 Patent through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

c.     Pursuant to 35 U.S.C. § 284, an award compensating Bell Sports for Defendant Smith's infringement of the '577 Patent and '631 Patent through payment not less than a reasonable royalty on Smith's sales of infringing products;

d.     Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant Smith's infringement of the '577 Patent and '631 Patent in view of the willful and deliberate nature of the infringement;

e.     Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs; and

f.     An assessment of prejudgment and post-judgment interest and costs against Defendant Smith, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284.

g.      That this Court award such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Bell Sports hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

OF COUNSEL:

David T. Pollock*
Quynh La*
REED SMITH LLP
101 Second St., Suite 1800
San Francisco, CA  94105
(415) 543-8700
dpollock@reedsmith.com
qla@reedsmith.com

Paul J. McDonnell*
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
pmcdonnell@reedsmith.com

    *Pro Hac Vice Forthcoming

Dated: August 22, 2025

**REED SMITH LLP**

 */s/ Brian M. Rostocki*
Brian M. Rostocki (#4599)
1201 North Market Street
Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com

*Counsel for Plaintiff Bell Sports, LLC*